oral argument not to exceed 15 minutes per side. Scott Graham for the opponent, you may proceed. Good morning, your honors. Good morning. Please the court, my name is Scott Graham on behalf of Mr. Pointer, and with the court's permission, I'd like to reserve three minutes for rebuttal. I'd like to dive right into what I think is the key issue in this case, and that is the application of the rules and principles that relate to whether or not there was an adequate nexus between activity occurring out on the street and the law enforcement's act in obtaining a search warrant for the Woodruff Street address. My argument to the court is essentially that what we have here is we have some activity occurring out on the street, no question about it, some criminal activity. The question is whether or not that activity provides a basis to believe that there would be either evidence of a crime or criminal activity within the Woodruff apartment. Our contention is that there is insufficient evidence. What we have here is, without question, another person, government refers to him as AG, and I'll do the same, who I think there was evidence about. He was a person who was engaged in some criminal conduct that was the subject of, I think, controlled buys, of observation. Mr. Pointer, on the other hand, as I read the facts and as I believe the facts establish, the worst thing he did was associate with AG. And the question then is, by associating with AG, was there adequate evidence to allow law enforcement to think there was a sufficient nexus to search the Woodruff address? Again, our contention is no, there was never a controlled buy at Woodruff. There was never actually, as I read the record, any transaction at Woodruff. What we essentially have is people coming and going from Woodruff. We have an immense amount of speculation, and I realize that drawing inferences is part of law enforcement's job, but they have to be reasonable inferences. And so, for example, if law enforcement thinks that AG wanted to do a deal, and he needed someone to cook some cocaine into crack, and there was contact between AG and Mr. Pointer, and then eventually, apparently, there is a controlled buy of crack. The question is, does that establish that there is a basis to believe that Mr. Pointer was involved? I think not. Who knows why? If somebody orders cocaine, and the person they order it from says, I don't have it, I need to get it cooked up, I'm going to get it, and then the two people that are involved are seen going in and out of this apartment, and then they say, well, okay, the crack is ready, and they sell it, I'm having trouble figuring out why that isn't enough of a nexus. Your Honor, I guess in my analysis, I would parse that a little bit in this regard. Agree, there's a statement made by AG, I don't have any. I think those facts happened here. And then there is some contact with Mr. Pointer, and there is a coming and going from a particular apartment. But the way I read the affidavit, there is no time frame set, and surely, I think I would have to concede that if there is a timeline where two people, that statement is made by AG, immediately connects with Mr. Pointer, they go into the apartment, they walk out, and the sale occurs, well, I think I've got a significant problem. That's not what happened here. Well, the dates, at least on one of these transactions, are October 5th and October 6th. Right, Your Honor, but what could happen during that 24-hour period? A lot could happen during that 24-hour period. I mean, I guess the... So you're saying that the fact that it was ordered on one day and then delivered outside the apartment on the next day, that's too attenuated? Yes, Your Honor. Yes, I'm saying that without more, like an observation of Mr. Pointer, some observation other than him going into the apartment and then leaving, and then the next day a sale being made, you know, my argument to the court is that that's not enough. Well, actually, Pointer doesn't have to be tied to this at all in connection with getting an affidavit to search, or in connection with an affidavit to search the apartment, right? I agree. There's just evidence of a crime regardless of who might have been committing it. And I agree, Your Honor, that the real question is, even if someone thought that AG had cooked crack in that apartment, or committed some other crime, that that's the key to the search warrant and the search. However, we don't have that either. What we know is, statement by AG, I got to get some or get some cooked up or whatever. Clearly, the import being, I have powder, I don't have crack, and then he connects with Pointer, and then the next day there's a sale of crack. And I think we can boil down the facts to deal with the question of whether or not it is too attenuated or not. If the court would conclude that it's not, or that there were sufficient facts relating to AG that would allow the search warrant, well, I think I've got a significant problem. But my contention to the court is that we don't have those facts. What do you think your best case is that would suggest these facts are not enough? Well, I certainly think that, I don't think that there is, and one of the problems in this area is, I don't know that there is a tremendous case that has analyzed a specific set of facts that get close to this. But, to me, the best case that I have is, is still Reed and the application of the question posed in Reed about exactly what is a sufficient nexus. I think if you... Reed found there was sufficient nexus. Well, they did, but they also relied very, the court relied very heavily on good faith there. And I know I have a good faith argument here, and I stand on my brief on that. The facts are pretty well settled there. So, the discussion in Reed, to me, opens this question wide in terms of what is the, what connection is needed. I mean, we start with a principle that happens every day, at least in the area in which I practice, where someone is stopped on the street. They have, law enforcement finds a distribution quantity of some controlled substance, and a search warrant is obtained for their residence. And the question becomes, is that sufficient to, is the stop and the discovery of the distribution quantity sufficient to allow a search? I am challenging the proposition that automatically, if that stop occurs and that distribution weight is found, that there's a right to search the residence. And I think, the way I view Reed, that question is one that this court, you know, has wrestled with. The general standard, I understand what the ultimate holding was. But I think that there is a real important policy question there. And here, the way I see it, my argument is that whatever happened with AG, the law enforcement and the government now, seeks to automatically link everything to Mr. Pointer. And even with AG, in regard to Woodruff, there's not a sufficient nexus. And so, if Reed left open for discussion the question of what connection is needed, and I think it did, my argument to this court is that more is needed than we found here. And my argument is that what the government does now, and what happened before, is to attempt to draw every conceivable inference without a sufficient factual basis to come up with that nexus. So what happens if a CI calls a drug dealer and says, I want to buy crack, whatever it is, and the guy says, I don't have it, but I'll get it for you and I'll get back to you. They surveil the dealer, and they see him going to a house, and then he leaves the house, and he calls the guy back and says, okay, I got some drugs, and he delivers the drugs. Would that provide enough nexus? It certainly could, Your Honor. Why isn't that this case? Because it's at least 24 hours later. So the only difference is the timing. In this particular case, the one thing that is clearly, it's not only time, it is time, that's my primary argument. The passage of time leads to the question of whether or not, what else happened in between? Where else did... They had to cook it, that's what happened. In this case, where did AG go? What did he do? How many different people did he see? How many other locations did he go to? In this case, over that 24-hour period, there's no surveillance, or there's no indication of surveillance that says, well, we continued to surveil AG, and he didn't go anywhere else. He went home, and then he hooked up with his buyer the next day. There's none of that. So what we're saying is... So, Your Honor, I guess in an attempt to answer directly, it's not only the passage of time, it's what events could have occurred during that at least 24-hour period. That's my argument to the court, that when that happens, there has to be more. Because what we have here is simply, someone's found with a distribution weight, there is a conversation between a third party, and it ends up being a CI. Is that enough to search the residence? And my argument is no. It's not. So I see that... So if it's a one-shot deal, I understand your argument there, but if there's some evidence of an ongoing conspiracy or an ongoing drug activity, does that affect the analysis, your temporal analysis? It potentially could, Your Honor. Don't they have all kinds of ongoing activity evidence here? Well, they have a lot of evidence regarding activity by AG. They certainly have activity that AG and Mr. Pointer were acquaintances, spent some time around each other, spent time at or around this apartment. But the mere... They knew each other. They were friends. I have to live with that fact. And I do, because there was no indication that I saw, or that I have seen, that that alone establishes criminal activity. And everything else that they had related to AG and not Mr. Pointer. With that, my time's up. I thank the Court. Thank you. Good morning. May it please the Court. My name is Jonathan Roth. I'm from the United States Attorney's Office for the Western District of Michigan, and I represent the appellee. There are a couple issues that counsel raised that I would like to address this morning. First, and most summarily, I think during his argument, at times the nexus element is conflated. And it's conflated with a nexus to Mr. Pointer or a nexus to Mr. Gardner, which, as the Court has pointed out, is not the appropriate question. The appropriate question is the nexus to the Woodruff apartment, which in this case, as laid out through the affidavit, is incredibly strong over a long period of time. So with that, I do want to address, as the Court has already asked, the salient facts as it regards to the cooking that goes on at that apartment. And there's two incidents that this happened. In June, which is addressed in paragraphs 14 and 15 of the affidavit, and again in October, which is addressed in at least paragraph 25 of the affidavit. And each time, it's not only that AG says, we're out of Coke, and we need to cook it up, and I'll get back to you. It's more specific than that. On the day of, the CI contacts each time and says, I need crack. AG responds, I don't have any right now, and I need someone to cook it up. Each time, in June and October again, AG is seen meeting with Pointer outside of the Woodruff apartment and then going in. That same day, each time, AG then calls the CI back and says, it's ready to go, I'll meet you tomorrow. And in fact, in October, he says, Pointer will meet you tomorrow to deliver it, which is ultimately what happens. In each time, so regardless of whoever else AG may meet with that day at Woodruff, wherever, we know based on them going into Woodruff before saying, we don't have it, we need to cook it up, and then calling that same day, and the affidavit notes nowhere else that they go, saying it's ready now, that that is where that's being cooked up. So for those reasons, that nexus to Woodruff is overwhelming. The other point that I do want to address very quickly is read. It's something that Mr. Graham cites several times in several different manners as it relates to this case. Read at its core addresses the nexus that is necessary between a drug dealer and his home. How much is necessary beyond just saying, this person deals drugs, and so they must have stuff at their home, and therefore they must have evidence of their drug trafficking at their home. Whatever else we can say about that issue, that's not the case here. The affidavit expressly points out that this is not Mr. Pointer's home, that he lives elsewhere. Whether it's in the Lansing home or the Detroit home, it's not the Woodruff apartment. And so that foundational question of what nexus is necessary to say somebody keeps drugs at their home is not at issue here, and in that same way, read is not applicable. This affidavit is built on the fact that coming and going from multiple controlled buys, that apartment is pertinent. Whether it's AG coming and going immediately before or after, whether it's the fact that the cars that are used at each of the controlled buys are seen parked there repeatedly, and whether it's the fact that they see Mr. Pointer and Mr. Garner go to do other apparent hand-to-hand deals after leaving the Woodruff apartment. It all goes back to tie that nexus and that activity to the Woodruff apartment. If the court has no further questions, I would rest on my brief. Thank you. Thank you. Thank you. The only point I would make is that, excuse me, in regard to this question of whether read applies because it's not Mr. Pointer's home, government agrees that he has standing to challenge the search, whether it's his home or a place he uses. The question is, is there a nexus? So I don't think that read becomes irrelevant or inapplicable because of that. With that, I thank the court. Thank you very much. And the case shall be submitted.